May it please the court. My name is Trey Bryant and I represent Dable Nicholson in this appeal. This is in regards to an ERISA case that originated out of Arkansas. To get started, I think one of the major issues before the court today would be the application of Rule 101, which is outlined by the Arkansas Commission for Insurance. Within that rule, it is stated that there is no use of discretionary clauses within insurance contracts within the state of Arkansas that have been issued or renewed after March 1st, 2013. Yeah, but is there any evidence here that it was renewed? I mean, we can guess maybe it is, but I didn't see any evidence saying for sure this was renewed on a particular date. Your Honor, I would say that it is renewed because within the policy itself, it states that it's a 12-month contract, that it ceases and terminates without the payment of a premium. If it's going to renew, it has to be renewed by a new payment. Just because the contract can be extended out doesn't mean that they just get to call every anniversary date a renewal date, or not a renewal date. To make the policy go forward, it has to be paid for and has to go back into effect. Actually, if you were to look at Blacklog's dictionary and just look at the definition of renewal, the act of renewing or reviving the substitution of a new grant engagement or right in place of which one has expired, again, it's a 12-month contract, of the same character and on the same terms and conditions as before. That would be, in my opinion, the renewal of a contract. You renew your car insurance. You're going back and you're taking the contract and you're putting it back in place. My recollection, though, and maybe I'm wrong about this, and please correct me if I am, but my memory of the document is that you do have to make a payment every year, but nowhere in the plan does it call it a renewal. And so that would be a problem if you haven't shown that there was an actual renewal. Well, actually, I believe it does state in the policy. The policy states, and I think this is Appendix 806, I may have to correct that number, but subject to the policyholder's provisions and the incontestability provisions, this Group Policy A is issued for the initial rate guarantee period shown in the coverage features, and B, may be renewed for successive renewal periods by the payment of premiums set by us at each renewal date. Well, the contract, again, within the plan calls itself a 12-month contract. And if there is no extension of that or rewording of the 12-month contract, by its own language, is a renewal. Nowhere, and I believe an argument was made that it's an anniversary date, nowhere within the policy is the word anniversary stated. I cannot find it. Maybe council can correct me if I'm wrong, but I do not see that language anywhere. Council submitted a case that came recently out of Arkansas, I believe yesterday, and it talks about the distinction between an anniversary date and a renewal date and says that within the policy it states anniversary date. Well, in the footnotes it says that there was an argument between the parties about whether or not it was a renewal because Amendment 20, which was not included in the record, discussed renewal language. The court relied on what it had in the record. It could not go back and see Amendment 20. So there could have been a distinction in that if that language was current. So I don't believe that's a case that should be relied upon. Do you have a case supporting the notion that Rule 101 trumps or preempts the ERISA procedures and standards of review when the insurance policy is the plan? Your Honor, I think that would go back all the way to Firestone if you're removing the discretionary clause that says that a day vote will renew. I'm sorry, review. Well, but Rule 101 doesn't remove a discretionary clause. It's state law purporting to preempt the ERISA standards. And I know ERISA has some deference to state insurance regulation, which is why I premised my question on the policy being the plan and the issue being the claims procedures. The ERISA claims procedures under the plan, which happen to be in a policy, which is not uncommon. I'm inclined to think, without researching it yet, that Rule 101, as you're arguing it, is preempted. Your Honor, I believe, and I will have to, on my rebuttal in two minutes, I'll have to find you the case, but I believe it's been decided and issued out in about 25 states that this removal of discretionary clauses is occurring and it has been approved and it states that the state can argue and state what policies language can be included. I'm talking about federal cases, saying that when a policy is a plan and the policy happens to be issued in a state which has one of these statutes, that the ERISA claims procedures as interpreted by the U.S. Supreme Court are out the window and the insurance company is governed by the state law. Now that's pretty, given the preemptive force of ERISA generally, that's an extreme proposition and that's why I asked you if you had any support for it. Your Honor, I do believe there is support for that and I will have to get you the case on my rebuttal, but my understanding is the contract itself has to be issued within the state, so it would have to be in line with the state's statutes and regulations to be issued and to get to the discretionary clause based off Firestone, it's supposed to start as a de novo review, but Firestone said that if the insurance companies include this discretionary clause, then they get to have the power. They get to make the decisions. Well, if you remove that clause, you go back to pre-Firestone and it's a de novo review. Again, Your Honor, to continue on with 101, it does talk about striking the language from any plan or policy that is issued or renewed within the state. Our argument is that by having this 12-month period, that it's a renewal when you pay the next premium. So each year, my client was found to be disabled 18 months after the statute came into effect on March 1, 2013. So no matter what, based on the plain language of the policy, it had to renew within that time period. There was no extension, no change of the language by the insurance company or in the policy that extended it past 12 months. There are other arguments that we've raised that I'll address on briefly. We believe that there were issues with the failure to consider that our client was disabled because of his back. His back, he had to take prescription narcotic medication. This man was an engineer that worked off-site. I believe, actually, we don't really have an argument with the VOC that was submitted by the insurance company, stating that he was to do sales calls, to do meetings, to go out and set up heavy equipment on oil rigs, to align them, to teach the people how to do it. The issue is the people that employed my client's company don't allow people on narcotics on their properties. You're doing serious equipment. You're not allowed to drive there. His company would not allow him to drive once they found out he was on narcotics. So how many years did he do it wrongfully, then? Your Honor, I don't know how many years he did it wrongfully, but he did. Lots. He did, Your Honor. And he's not disputing that. The employer didn't object and no client objected, right? Well, Your Honor, they didn't know he was on the drugs until he failed a drug test. When he failed a drug test, it came to the attention of his supervisors, which is a note that he wrote, the supervisor, and it's in the record, stating that he was not aware. He went to him, he talked to him, he found out what medications he was on, and he states in his letter, individuals, and he lists a couple companies, Exxon, I think Chevron, and one other. They will not allow anyone on their property if they're on narcotics. He was on narcotics because of his disability and the pain. What about the argument, the occupation versus your job argument? Your Honor, but I believe that as an engineer, and if you look at the VOC that was submitted by them, it talks about on call, going to site, set up. So I believe it falls within the occupation, not just his specific job. He did do extra meetings. Part of his job was to go give lectures. I don't believe that falls within the VOC, so I don't disagree on some of those aspects, but I do disagree that his occupation did not require him. He was a salesman. He was setting up materials. So he had to be on site. It was part of his occupation, and the only response that the insurance company gave when that was brought to their attention was, well, we're going to look at it at the national economy or the national occupation. They didn't say anything about, well, okay, you can drive, or no, you can go on sites where these are done, where there's drug tests that you could be kicked off the property. Your Honor, I'm going to reserve my last 30 seconds. Thank you. Thank you. Paul? Good morning. May it please the Court, my name is Rick Potler. I'm from the law firm of Thompson Cobra here in St. Louis. I have the privilege today of representing the Appleys. I apologize for my voice. I have the St. Louis allergy that most of us do right now. The overarching issue today for this Court is whether the decision of Standard Insurance Company to deny disability benefits to Mr. Nicholson was arbitrary and capricious. Could you address the Rule 101 issue? I asked about the timing and the policy, and I just like to, I think it's complicated, and I'd like to know factually in this case what's going on with that. Thank you, Your Honor. There are multiple reasons why Rule 101 doesn't apply. First of all is because the parties filed a joint motion to the Court saying that the arbitrary and capricious standard of review applied. And for that reason, the Court ought to take certain action, which it took. And I don't think that the appellant can now, I think he's judicially a stop from now, arguing that some different standard applies. The second thing is, Your Honor, that it does say that it only applies to policies that are issued or renewed after March 1, 2013. Judge Holmes specifically found that there was no evidence in the record, and there isn't any, that this policy was issued or renewed after March 1, 2013. And I think that finding of fact by the judge is subject to the clearly erroneous standard of review by this Court. Well, even if we do that, he said that there's a provision that says basically every time you pay at the yearly market it renews it. It does not say that, Your Honor. It does say that the length of each renewal period will be set by us, but will be not less than 12 months. So there's no reason why that when it was last renewed that it wouldn't have been renewed for five years. To say that every time they pay a policy, which is the anniversary date, changes it and makes it subject to the statute, that's the case that I cited to the Court that was just decided on March 30th by the judge in Arkansas and says that can't be the rule. And that's what he's basically arguing is every time the anniversary comes up and they pay premium again, that constitutes a renewal. And that's what the judge rejected, that very argument. And I think it has to be rejected. I don't think that that makes any sense. So it's really a failure proof on the part? Yes. Okay. The other argument, Your Honor, is that this policy was issued in Georgia. And the court in Arkansas, subsequent to the finding that our briefs have held, that a policy that is issued to an employer by a company, and neither which is located in Arkansas, and that specifically says it's issued in Georgia, it's not subject to the Arkansas statute in any of it. The other thing is, Your Honor, I would tell you is that I think that even if this court was to apply to noble review, we ought to win. And that's what I would intend to address now, if I might. There were three issues that Standard had to address. What is this gentleman's occupation in the national economy? Second of all, what evidence has he produced that he's not able to perform that occupation as it is performed in the national economy? And thirdly, what objective medical evidence did he present to show that he had a physical disability that prevented him performing that occupation? Standard identified and said, this is what we think your combined occupation is. He never contested that it was something other than that. And I think that Mr. Bryant, in his argument this morning, acknowledged that they have no argument with that. So what evidence did Mr. Nicholson present to Standard to show that he was unable to perform that occupation as performed in the national economy? He didn't present any evidence. He certainly argued strenuously that he could not do his particular job, that there were nuances and peculiarities of his job that he couldn't perform, but he never argued and never presented evidence that he was unable to perform the job as it was performed, the occupation as it was performed in the national economy. And this court, in Hankins v. Standard Insurance Company, a 2012 case, specifically said, it's not enough to show us that you can't do your specific job if Exxon had specific requirements on you. You have to prove you can't perform it in the national economy. And he never argued before us at Standard. He never argued in the district court. And he hasn't even argued here. Was the occupation that the sales field engineer, was it limited to the oil and gas and energy industries? Who was it? It was, Your Honor, the occupation. So would any refining company or other energy company not have the same kind of rules that Exxon and Chevron have? First of all, I don't know the answer to that. It's not in the record. But secondly, Your Honor, his employer acknowledged that they had become aware that he was taking narcotic drugs, and they did nothing about it. They allowed him to continue to work. Okay, but that's not the national economy argument. That's a different argument. You're correct. It is not a different argument, but I think it is responsive to your question because the theoretical, well, somebody might have said you can't come on our site. Well, the facts are that they did allow him to continue on the site when his employer was fully aware that he was taking these narcotics and had been taking them for years. Exxon and Chevron let him on the site knowing that he was taking them? No, his employer, knowing that he was taking the narcotics, continued to employ him, continued to allow him to do his work, continued to allow him to go to his clients' places and perform work. So they apparently weren't concerned about this supposed prohibition by Exxon in that. They should have been. So this takes us then. Well, if the refinery blew up, the employer would have been out of business on these facts. The next question is whether there was any objective medical evidence presented, and there are several points in this regard. First of all, this Court has repeatedly held that a claims administrator in the position of standard is reasonable to request objective medical evidence, especially when the policy is here required it. Secondly is that Judge Holmes specifically found that Dr. Neba, the only physician who ever submitted anything on behalf of Mr. Nicholson's claim, never presented any objective medical evidence of his disability, and that I believe is subject to the clearly erroneous standard of review by this Court. And there's no argument that it was clearly erroneous. In fact, Mr. Nicholson has never contested the fact that he never presented any objective medical evidence. So then you ask, well, was there any substantial evidence in the record? The district court did this on the administrative record. It did. So it's reading the same record we are, and we have the same standard of review as the district court. I'm not sure clearly erroneous is the applicable standard. Well, since it's a factual determination, I believe that it is, Your Honor, under this case. Actually, he says I find nothing in the record on this, and we read the record and we find something. I mean, we're all applying the substantial evidence. Yes, yes, yes. And here, Your Honor, there were three physicians who reviewed these medical records, a board-certified orthopedic, a board-certified internist, and a board-certified physical medicine and rehabilitation, and all three concluded that this gentleman was capable of performing this occupation. On the other side of the record, there was an internist who really did nothing other than, when you read his medical records, report Mr. Nicholson says he's in pain and can't work. He never conducted any objective tests. There's no MRI. There's no X-ray. There's no CT scan. And Standard even went back to them and said, can't you give us any objective evidence to show that something has changed here? You've had a back condition since your automobile accident in 1978. And what was Nicholson's response to that? We don't need to. We don't have anything. Because, well, under the statute, we don't need it. No. They said, we don't have anything. And so I believe that the three medical opinions by the physicians, the board-certified physicians, and the specialties of orthopedics and physical medicine rehabilitation provided the substantial evidence to support Standard's decision. This court, in two different decisions, in Prozesio v. Prudential, and even more recently on August 23rd of 2018 in Zaske v. Liberty Life, specifically said that we have the right to select the opinions of those physicians over the treating physician, that it's not arbitrary and capricious to do so. So for all of these reasons, I would ask this court to affirm the judgment of the district court. Thank you. Thank you. To address the renewal language, I would be hard-pressed to think that the insurance company would say that it's a two-year renewal period when their client or the person investing with them or purchasing the policy didn't pay for the second year. You have to renew it. To keep it going, you have to make the next payment. To address the drug issue, if a drug prescription disqualifies a client from performing his past relevant work, he is not capable of returning to that work. Subjective medical can be used with pain relations in a risk of cases, and it can determine and be found to be accurate, can be used to determine if someone is disabled. Pain and fatigue are certain things that are subjective. They're not always on an X-ray. Your position was you didn't need to show anything like the CT scan, MRI, or anything like that? I believe there was adequate medical. A lot of his medical goes through his back, and it was determined that he was not a surgical candidate a long time prior to that. There was nothing he could do but pain management. There were no other steps for him. And as far as his being disqualified for being in that position, what's your position on that? He shouldn't have been allowed to work. Is that another example of the old saying that no good deed goes unpunished on part of the employer? They shouldn't have let him work. Well, I think that because of their regulations and the medicines he was on, that no, he could not be there because his medical need for narcotics was a direct result of the increasing pain that he suffered due to his disability in his back or degenerative disc disease that over a period of time got worse. And if there's no actions that can be taken other than medication, he doesn't have any other options. And they don't have an option because, again, his disability required treatment through medication and narcotics. Thank you. Very good. Thank you, counsel. The case has been very well argued and nicely briefed and taken under advisement.